UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:23-CV-00099-JHM-HBB

DONALD M. LYNCH                                                    PETITIONER

VS.

CRAIG HUGHES, WARDEN                                              RESPONDENT

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

## I.    BACKGROUND

Petitioner Donald M. Lynch filed, *pro se*, his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (DN 1).[1]  Respondent Craig Hughes filed a response to Lynch's petition (DN 16). Lynch filed a reply in support of his habeas petition (DN 18).  For the reasons set forth below, the undersigned **RECOMMENDS** that Lynch's habeas petition (DN 1) be **DENIED** and **DISMISSED**.  Additionally, the undersigned **DOES NOT RECOMMEND** issuance of a Certificate of Appealability for the claims set forth in Lynch's Amended Petition.

## II.    FINDINGS OF FACT

### A.  Proceedings Before the Ohio Circuit Court

Following a trial before the Circuit Court in Ohio County, Kentucky, ("Ohio Circuit Court"), the jury found Lynch guilty of first-degree rape, murder, abuse of a corpse, first-degree trafficking in a controlled substance, and tampering with physical evidence.  *Lynch v. Commonwealth*, 642 S.W.3d 647, 650 (Ky. 2022).  The Ohio Circuit Court sentenced Lynch to life without parole after the jury found that Lynch committed murder during the commission of

---

1 The District Judge referred this matter to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(A) and (B), for rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter (DN 8 PageID # 36).

rape. *Id.* As a matter of right, Lynch appealed his conviction and resulting sentence to the Kentucky Supreme Court. *Id.*

### B.    Direct Appeal

The Kentucky Supreme Court provided the following summary of the evidence presented during the jury trial before the Ohio Circuit Court:

> Amanda Riley (Amanda) took her daughter to the doctor on the morning of December 16, 2016. Amanda's mother, Sharon Ellis (Ellis), gave Amanda the child's insurance card before she left. Amanda stopped by the house of her estranged husband, Heath Riley (Heath), to get the child's health-care debit card. They argued, he refused to give it to her, and she left. Amanda then took her daughter to the doctor, returned home, left again to run some errands, and then returned home again. Amanda left home once more that evening. Ellis did not see who had picked her up.

> Amanda's body was found floating in the waters of the Peabody Wildlife Management Area early the next morning by a trapper. Her daughter's insurance card was discovered in her pocket after police retrieved her body from the water. The insurance card led police to Heath, who identified her body. Amanda's cell phone and a pack of cigarettes were located at the top of a boating ramp near where her body was discovered.

> Police notified Ellis that Amanda had died. While the police were still at Ellis's home, Amanda's boyfriend, Joshua Estep (Estep), called Ellis because he was concerned that he had not heard from Amanda. Ellis informed him that Amanda had died. Estep was in Florida at the time. He belonged to a local chapter of a motorcycle club.

> Police immediately started investigating the details of Amanda's life. Lynch's name came up several times during the course of their investigation. One of Amanda's friends provided police with Lynch's phone number. Lynch's phone number was in Amanda's phone under the name "Matt Dodge."

> Amanda's cellphone contained text messages between the two. She had texted Lynch early on the evening of the 16th and asked him if he had methamphetamine, and offered him gas money if he would come pick her up. Lynch texted Amanda when he arrived at her house. Lynch had deleted the texts between him and Amanda and

had attempted to delete all other data from his cell phone, including a text message from James Johnson, which said "hope you ain't been out at your usel [sic] nighttime hangout in the last couple days."

Lynch gave a statement to police several days after Amanda's death. He claimed that he and Amanda had been together on the night she died, but that he had smoked methamphetamine with her and then left her in the middle of the road, though he was not certain where.

An autopsy was performed on Amanda's body. She died from blunt force trauma to the head. She had lacerations to her scalp, bruising and contusions on her arms, and broken bones in her right arm and hand. Post-mortem testing revealed that Amanda had methamphetamine in her blood. The examiner also completed a rape kit, which revealed that Lynch's DNA was present. Subsequent testing performed on Lynch's clothing would show that Amanda's blood was present on Lynch's right shoe.

Cell location data analysis was completed on Lynch and Amanda's cellphones. The data reflected that Lynch and Amanda's cellphones were in close proximity for much of the night. Between 7:30 p.m. and 9:00 p.m. Lynch's phone left the wildlife management area. Amanda's did not leave the area, and her phone did not move at all for the remainder of the night.

In January 2017, about a month after the murder, Joseph Cox (Cox) was walking along Rochester Road—which runs near the Peabody Wildlife Management Area—when he found a purse under a bridge. Cox testified that when he found it, the purse was soaking wet and he put it on a sheet to dry and waited until the next day to go through it. Cox found Amanda's identification in the purse, and, after recognizing her name from the news, notified the police. He did so not by calling the police, but instead by riding around in search of a patrol car. He stopped for food and saw a Kentucky State Trooper nearby. He gave the purse to police at that time.

The Commonwealth theorized that Lynch had raped Amanda, she got out of his truck, and then he murdered her. The Commonwealth pointed to the bruising and defensive wounds on Amanda's body, the semen present in her vagina, anus, and underwear, and the sheer amount of trauma to her head and body when arguing that the murder occurred in the course of rape.

At trial, Lynch chose not to testify. Defense counsel asked the trial court to allow Lynch's waiver of his right to testify to be on the record. The record reflects that the following exchange occurred

3

after the trial court dismissed the jury for a brief recess and asked everyone present to step out of the courtroom:

Court: [Defense counsel], you wanted to put something on the record?

Defense Counsel: Yes, sir. Mr. Lynch is choosing to exercise his right not to testify. And, uh...

Court: You want to ask him some questions [on the record] and make sure he ...?

Defense Counsel: Yes, sir.

Court: Okay. Go right ahead.
[...]
Defense Counsel: Are you Donald Matthew Lynch?

Lynch: Yes, sir.

Defense Counsel: And do you understand that you have a right to testify here today, and that's only something you decide?

Lynch: Yes, sir.

Defense Counsel: Has it also been explained to you that you have a right not to testify?

Lynch: Yes, sir.

[...]

Defense Counsel: Now, Mr. Lynch, based on this knowledge you have—that you have a right to testify or right not to testify—that is completely your choice. What are you choosing to do?

Lynch: I am choosing not to take the stand and testify due to the fear of retaliation on certain things or, say, things come out.

Defense Counsel: Okay, so you're choosing not to testify?

Lynch: Yes, sir.

Defense Counsel: Judge, I think that's all I have of this witness.

Court: What was the reason?

4

Lynch: Fear of retaliation due to certain affiliations of witnesses and relations to motorcycle clubs. Physical health reasons that might arise later if I do [testify].

Court: I don't quite follow the logic of that. So, you're being tried for murder here, and you're saying that for fear of retaliation you don't want to testify in your defense?

Lynch: Fear and retaliation by certain people who have been called to the stand. Their affiliation with certain clubs and relations to a lot other people around based on knowledge I have of that person and the club, he's affiliated with, I choose not to testify. It puts my life and the family of mine that is still alive in danger, because he has been to a state where my family is living, the surviving members of my family. Based on the facts and the evidence I know of his affiliation, it is detrimental to me and my family if I do get up there and disclose certain stuff and also that I don't feel that at this time that it's going really change anything that's been presented.

Court: Alright. Okay, alright, thank you very much.

*Id.* at 650-53.

Lynch raised three claims in his direct appeal: (1) the trial court erred by failing to inquire about Lynch's waiver of his constitutional right to testify; (2) the trial court erred by failing to direct a verdict of acquittal on rape in the first degree; and (3) the trial court erred by failing to direct a verdict of acquittal on tampering with physical evidence. *Id.* at 653. The Kentucky Supreme Court found none of Lynch's challenges meritorious and affirmed the Ohio Circuit Court's judgment. *Id.* at 653-60. The Kentucky Supreme Court issued its opinion on March 24, 2022. *Id.* at 647.

C.     State Postconviction Relief Proceedings

On January 10, 2023, Lynch filed, *pro se*, a motion to vacate, set aside or correct sentence pursuant to Ky. R. Crim. P. 11.42 ("Rule 11.42 motion"), a supporting memorandum, and exhibits (DN 16-5 PageID # 102-19). He raised the following claims before the Ohio Circuit Court: (1)

the trial court denied Lynch proper contact with defense counsel by phone or visitation; (2) the trial court denied Lynch proper access to a complete copy of the motion of discovery until two weeks before trial; (3) defense counsel failed to properly prepare Lynch for trial; (4) defense counsel failed to properly question FBI agent Kevin Horan; (5) defense counsel failed to acquire an expert witness to refute the testimony of FBI agent Kevin Horan regarding phone ping location data; (6) defense counsel failed to properly question Detective Matt Wise; (7) defense counsel allowed a false and misleading statement of facts to be used by prosecution regarding phone ping data; (8) defense counsel failed to object to Judge Timothy Coleman's involvement in the case after he was conflicted out due to a conflict of interest; (9) defense counsel failed to raise proper objections during trial in order to properly preserve fact for appeal; (10) defense counsel failed to properly question and advise Lynch about his refusal to testify; (11) defense counsel failed to strike members of jury who knew the victim's family at the request of Lynch; (12) defense counsel failed to strike a member of the jury who admitted to know the lead detective on the case at the request of Lynch; (13) defense counsel did not impeach the mental health expert when he was given a chance to cross examine him, defense counsel failed to inquire about the effects of stimulants to the human body, and defense counsel also failed to file a motion to obtain a private mental health expert to refute the finding upon request of Lynch; (14) direct appeal counsel was ineffective by not presenting the voir dire violations where the trial court failed to strike certain jurors; and (15) the trial court abused its discretion by not excusing members of the jury that admitted to knowing members of the victim's family and one juror who admitted to knowing the lead detective on the case (*Id.* at 104-06).

In an order entered on March 27, 2023, the Ohio Circuit Court denied Lynch's Rule 11.42 motion (DN 16-6 PageID # 120). The trial court explained that Lynch failed to state specifically

the grounds on which the sentence is being challenged and the facts on which Lynch relied in support of such grounds (*Id.*).  Additionally, the trial court indicated that Lynch's motion failed to demonstrate both that counsel provided deficient assistance and that Lynch was prejudiced as a result (*Id.*) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

Lynch appealed to the Kentucky Court of Appeals (DN 16-7 PageID # 121).  He also filed a motion of appeal (DN 16-8 PageID # 125-26).  The Kentucky Court of Appeals directed the Department of Public Advocacy to examine the record and advise whether it intends to represent Lynch on appeal (DN 16-9 PageID # 127-28).  The Department of Public Advocacy subsequently filed a motion to withdraw as counsel because the action does not merit the appointment of counsel under the guidelines of KRS 31.110, and for Lynch to file a *pro se* brief (DN 16-10 PageID # 129-30).  The Kentucky Court of Appeals granted the Department of Public Advocacy's motion to withdraw and directed Lynch to file his *pro se* brief within 60 days (DN 16-11 PageID # 132-33).  Lynch filed a motion to reconsider his request for the appointment of counsel (DN 16-12 PageID # 134-35).  The Kentucky Court of Appeals subsequently issued a Notice that Lynch's brief was overdue and that his failure to act within 20 days would result in dismissal of his appeal (DN 16-13 PageID # 136-37).  In an order entered on October 9, 2023, the Kentucky Court of Appeals dismissed Lynch's appeal for failure to respond to the Notice (DN 16-14 PageID # 138-39).

D.    The Habeas Petition and Amended Petition

Meanwhile, on September 8, 2023, Lynch filed, *pro se*, his habeas petition (DN 1).  Ground One in the habeas petition asserts that the evidence did not prove guilt beyond a reasonable doubt on all the charges except for trafficking (*Id.* at PageID # 5).  Ground Two presents the claims that Lynch raised in his Rule 11.42 motion (*Id.* at PageID # 7, 17-18).

In his response, Hughes asserts that the habeas petition should be denied and dismissed because Lynch has failed to state facts in support his claims (DN 16 PageID # 58-59) (citing Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts; *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) (Ruling that "conclusory allegations, without evidentiary support, do not provide a basis for habeas relief."); *Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004) (holding that "more than bare assertions of legal conclusions [are] ordinarily required to satisfy federal notice pleading requirements.").  Alternatively, Hughes explains why each ground for relief lacks merit and should be dismissed (*Id.* at PageID # 59-74).

In his reply, Lynch attempts to provide additional information in support of his grounds for relief (DN 18 PageID # 227-33).  Additionally, Lynch explains that the Ohio Circuit Court and the Kentucky Court of Appeals denied his requests to appoint counsel so an attorney could appropriately develop his fifteen post-conviction relief claims (*Id.*).

## III.     CONCLUSIONS OF LAW

### A.     Standard of Review

Because Lynch filed his habeas petition on September 8, 2023, review of the state court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA") (DN 1).  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  Under AEDPA, as to each claim asserted by Lynch, the Court must first determine whether it alleges that a federal constitutional right has been violated.  *Williams v. Taylor*, 529 U.S. 362, 367 (2000).  If the answer is in the affirmative and the state court adjudicated the federal constitutional claim on its merits, then this Court must employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition.  *Id.* at 367, 402-03, 412-13.

As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). In *Andrade*, the Supreme Court explained:

> Section 2254(d)(1)'s "clearly established" phrase "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In other words, "clearly established Federal law" under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision. *See id.*, at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). In most situations, the task of determining what we have clearly established will be straightforward.

*Id.* at 71-72.

The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citing Webster's Third New International Dictionary 495 (1976)). Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the writ if: (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." *Id.* at 412-13.

Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the writ if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 407-08, 413. When the Court makes the "unreasonable application" inquiry it "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. The state court's application of clearly established federal law must be more than simply erroneous or incorrect, it must be objectively unreasonable. *Id.* at 409-11. Consequently, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

A petitioner may obtain relief under § 2254(d)(2) "only by showing" the state court "conclusion to be 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) ("*Miller-El II*") (quoting 28 U.S.C. § 2254(d)(2)).[2] This "unreasonable determination" standard in § 2254(d)(2) applies to state-court decisions and "the granting of habeas relief." *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003) ("*Miller-El I*"). By contrast, the "clear and convincing" evidence standard found in § 2254(e)(1) "pertains only to state-court determinations of factual issues, rather than decisions." *Id.* at 342. Thus, in making an assessment under § 2254(d)(2), the Court presumes the state court's factual findings to be sound unless the petitioner rebuts the "presumption of correctness by clear and convincing evidence." *See Miller-El II*, 545 U.S. at 240 (quoting

---

2 The Supreme Court has instructed, "[w]e may not characterize . . . state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Moreover, "§ 2254(d)(2) requires that we accord the state trial court substantial deference." *Id.* at 314. This means that if "'[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's [factual] determination.'" *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

§ 2254(e)(1)).[3]  The "unreasonable determination" standard in § 2254(d)(2) "is demanding but not insatiable; as we said the last time this case was here, '[d]eference does not by definition preclude relief.'"  *Id.* (quoting *Miller-El I*, 537 U.S. at 340).

## B.    Direct Appeal Challenge

Ground One states, "[p]roof of [v]erdict evidence did not prove guilt beyond a reasonable doubt" (DN 1 PageID # 5).  The supporting facts section reads, "[t]he evidence did not prove guilt beyond a reasonable doubt on all the charges but on trafficking, which I admitted to" (*Id.*).  In his reply, Lynch indicates that his trial counsel "argued proof of verdict that the evidence does not prove guilt beyond a reasonable doubt" (DN 18 PageID # 229).  From this material the undersigned concludes that Lynch is challenging the sufficiency of the evidence as to the first-degree rape, murder, abuse of a corpse, and tampering with physical evidence charges, but not the first-degree trafficking in a controlled substance charge.

A federal court may not entertain a habeas claim unless the petitioner has first exhausted his available state court remedies.  28 U.S.C. § 2254(b)(1)(A); *Beach v. Moore*, 343 F. App'x 7, 10 (6th Cir. 2009).  To exhaust his available state court remedies, a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29, (2004) (citation omitted).  Here, the record indicates that Lynch's direct appeal brief to the Kentucky Supreme Court "fairly presented" only a part of the claim in Ground One of the habeas petition.

---

3 The Supreme Court has yet to define the "precise relationship between § 2254(d)(2) and § 2254(e)(1)[.]"  *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  Further, it has "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under §2254(d)(2)."  *Wood*, 558 U.S. at 300.

Specifically, on direct appeal Lynch challenged the sufficiency of the evidence as to the first-degree rape and tampering with physical evidence charges (DN 16-15 PageID # 143-44, 168-81). The Kentucky Supreme Court adjudicated that claim on the merits. *Lynch v. Commonwealth*, 642 S.W. 3d 647, 658-60 (Ky. 2022). Lynch did not "fairly present" to the Kentucky Supreme Court the portion of the claim in Ground One that challenges the sufficiency of the evidence as to the murder and abuse of a corpse charges. Furthermore, he is now procedurally barred from doing so. *See Bronston v. Commonwealth*, 481 S.W.2d 666, 667 (Ky. 1972). Thus, federal review of this portion of the claim in Ground One is barred unless Lynch can show "cause" for the default and actual "prejudice" arising from the claimed constitutional error *or* that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).

"[C]ause under the cause and prejudice test must be something *external* to the petitioner, something that cannot fairly be attributed to him . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). "Cause" is demonstrated when the procedural default on direct appeal is the result of constitutionally deficient performance by counsel. *Id.* at 753-54 (the two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984) is used to make that determination). But Lynch must present the claim of ineffective assistance of appellate counsel to the state courts as an independent claim before he may use it in this Court to establish "cause" for his procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). More specifically, Lynch must have raised in his Rule 11.42 motion and collateral attack appeal an ineffective assistance of appellate counsel claim based on counsel's failure to present on direct appeal a challenge to the sufficiency of the evidence as to the murder and abuse of a corpse charges. Upon careful review of the record, the

undersigned notes that Lynch did not do so. Therefore, he cannot demonstrate "cause" for the procedural default.[4] As there is strong evidence of Lynch's guilt and a lack of evidence for his claim, the actual prejudice requirement is not satisfied. *See U.S. v. Frady*, 456 U.S. 152, 170-172 (1982).

To satisfy the fundamental miscarriage of justice standard, Lynch must show that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 327-331 (1995); *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986). To be credible, an actual innocence claim must be substantiated with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Moreover, to establish the requisite probability, Lynch must demonstrate that it is "more likely than not" that "no reasonable juror" would have convicted him in light of all the evidence. *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324, 327-328; *Carrier*, 477 U.S. at 496. Clearly, Lynch has not satisfied the above requirements. Consequently, federal

---

4 In *Coleman v. Thompson*, the Supreme Court made the unqualified pronouncement that ineffective assistance by counsel during State post-conviction proceedings does not establish "cause" for a procedural default because there is no constitutional right to an attorney in such proceedings. 501 U.S. 722, 752-754 (1991) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). The Supreme Court has, however, recognized a narrow equitable exception to the rule in *Coleman* that would allow a habeas petitioner to establish "cause" for his failure to raise an ineffective assistance of trial counsel claim provided he shows that the claim has some merit and the "cause" for the procedural default of the claim was the absence of appointed counsel in his initial-review collateral proceedings. *See Trevino v. Thaler*, 569 U.S. 413, 417, 428, 429 (2013); *Martinez v. Ryan*, 566 U.S. 1, 10-18 (2012); *Woolbright v. Crews*, 791 F. 3d 628, 636 (6th Cir. 2015). The proceeding before the Ohio Circuit, after Lynch filed his Rule 11.42 motion, would be considered Lynch's initial-review collateral proceeding. As the trial court denied Lynch's request for appointment of counsel, there would have been the absence of appointed counsel in Lynch's initial-review collateral proceeding. But the *Martinez/Trevino* exception would not be applicable to Lynch's circumstances because he would be attempting to demonstrate ineffective assistance of appellate counsel, not trial counsel. Thus, Lynch could not successfully demonstrate "cause" under the *Martinez/Trevino* exception. Additionally, the *Martinez/Trevino* exception could not be used to overcome the second procedural default that occurred when the Kentucky Court of Appeals procedurally dismissed Lynch's appeal under Ky. R. App. P. 10(B). The Supreme Court has explicitly indicated that the *Martinez/Trevino* exception does not apply to appeals from initial-review collateral proceedings. *See Davila v. Davis*, 582 U.S. 521, 525, 530, 538 (2017); *Martinez*, 566 U.S. at 16. Consequently, the *Martinez/Trevino* exception would not help Lynch demonstrate "cause" to excuse his two procedural defaults.

review is not available as to the portion of Lynch's claim that challenges the sufficiency of the evidence as to the murder and abuse of a corpse charges.

The undersigned will, however, review the merits of Lynch's claim in Ground One to the extent he challenges the sufficiency of the evidence as to the first-degree rape and tampering with physical evidence charges. As mentioned above, Hughes posits that Lynch has failed to state facts supporting his claim (DN 16 PageID # 58-59) (citing Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts; *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Hall v. Beast*, 116 F. App'x 557, 559 (6th Cir. 2004)). As Lynch has provided some of the facts supporting his claim, he will be given the benefit of the doubt on this procedural challenge.

The pertinent part of the Kentucky Supreme Court's opinion reads:

> Lynch argues next he was entitled to directed verdict on the charge of first-degree rape. Ultimately, the trial court determined that there was enough evidence to submit the charge to the jury after hearing argument from both parties concerning Lynch's motion for directed verdict. The trial court stated:
>
>> I think that the evidence is sufficient for a jury to infer that from those circumstances, from the circumstances that occurred at that time, that she was beat up and bludgeoned and found with his semen in her, that a reasonable jury could infer that it was a non-consensual sexual act, and that the bludgeoning occurred for the purpose of keeping her from reporting that, so I'm going to deny the motion.
>
> In *Commonwealth v. Benham*, this Court explained:
>
>> [o]n a motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purposes of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.[5]

---

5 816 S.W.2d 186, 187 (Ky. 1991).

"To defeat a directed verdict motion, the Commonwealth must only produce 'more than a mere scintilla of evidence.' "[6]  "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal."[7]

KRS 510.040 provides:

(1) A person is guilty of rape in the first degree when:

(a) He engages in sexual intercourse with another person by forcible compulsion.

KRS 510.010 states:

(2) "Forcible compulsion" means physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter.  Physical resistance on the part of the victim shall not be necessary to meet this definition.

We now examine the evidence adduced at trial related to rape in the first degree.  The jury heard testimony and saw photos of bruising on Amanda's body.  Dr. Christopher Kiefer (Dr. Kiefer), who performed the autopsy on Amanda, could not say definitively whether the bruises on Amanda's body occurred before or after death.  He noted, however, that bruising after death, while uncommon, can occur.  Dr. Kiefer offered no testimony relating to injuries to the vagina or anus.  There was no medical testimony that would say definitively that any bruising to Amanda's arms, shoulders, or back was due to force applied by Lynch's hands, or whether they were caused by him bludgeoning her to death.  However, the Commonwealth specifically identified the bruising on Amanda's arms, back, and shoulders, and pointed to the semen present in Amanda's underwear, vagina, and anus to argue that all of this was evidence that Lynch held Amanda down to rape her, and then murdered her to cover up the rape.  With the foregoing evidence in mind, we cannot say that "it would be clearly unreasonable for a jury to find guilt" on the charge of first-degree rape.  We agree with the trial court that "a reasonable jury could infer that it was a non-consensual sexual act, and that the bludgeoning occurred for the purpose of keeping her from reporting" the rape.

---

6 *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187).
7 *Benham*, 816 S.W.2d at 187.

Lynch contends next he was entitled to directed verdict on the charge of tampering with physical evidence.  This issue was unpreserved.[8]  Lynch has requested review for palpable error.[9]  As this Court explained in *Wahl v. Commonwealth*:

> Palpable error is one "easily perceptible, plain, obvious and readily noticeable." "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." Our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process."[10]

KRS 524.100 states:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
> (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding.

We now examine the evidence adduced at trial related to tampering with physical evidence.  The jury heard from Ellis that Amanda had her purse with her when she left the house with Lynch on the night she died.  Cell phone data placed Lynch and Amanda's phones together where her body was found.  Both cell phone data and his own statement place Lynch in the approximate area that the purse was found on the night she died, but did not reflect whether he traveled along the exact path where Amanda's purse was found by Cox.  The jury was allowed to consider Cox's story on how the purse was found and no claims against his credibility were made at trial. Lynch recognizes that a jury is allowed to make reasonable inferences from circumstantial evidence.[11]  Lynch argues that the circumstantial evidence in the case was weak because the purse was found by Cox over a month later in a creek and no forensic testing was possible, therefore, he should have been entitled to a directed verdict.  The Commonwealth theorized that, after Lynch raped and murdered Amanda, he threw the purse in the river in an attempt to

---

8 Ky. R. Crim. P. 9.22.
9 Ky. R. Crim. P. 10.26.
10 636 S.W.3d 484, 501 (Ky. 2021) (internal citations omitted).
11 *Commonwealth v. James*, 586 S.W.3d 717, 722 (Ky. 2019).

delay identification of Amanda's body.  Though there was no physical evidence that linked Lynch to the purse, the cell phone data placing Lynch in the area as well as his own admission, coupled with the time and nature of Amanda's murder, as well as the physical evidence on Lynch's shoes and Amanda's body, all amount to "more than a mere scintilla of evidence."[12]  Considering the whole body of evidence, it was not error—let alone palpable error—for the trial court to allow the jury to hear and consider the charge, because it would not be clearly unreasonable for the jury to find guilt beyond a reasonable doubt based upon that evidence.

*Lynch*, 642 S.W.3d at 658-60.

When the Court conducts a review under either clause of 28 U.S.C. § 2254(d)(1), it must look only to the clearly established precedent of the United States Supreme Court.  *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003).  At issue here is the clearly established precedent set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979) that applies to motions for a directed verdict.

Because the restrictive standard of review set out in § 2254(d)(1) applies to Lynch's claim, federal habeas relief may not be granted unless he demonstrates the Kentucky Supreme Court's adjudication of his claim "was contrary to, or involved an unreasonable application of," the clearly established precedent in *Jackson*.  *See Harrington v. Richter*, 562 U.S. 86, 100-01 (2011) (quoting § 2254(d)(1); *Williams*, 529 U.S. at 412).  This is different from what Lynch appears to be seeking, a review of the state court record to determine whether he has satisfied his burden under the clearly established precedent in *Jackson*.  *See Harrington*, 562 U.S. at 101.  Stated another way, the issue before the Court is not whether Lynch was entitled to a directed verdict.  *See id.*  Rather, it is whether the Kentucky Supreme Court's decision—answering that inquiry in the negative—was "was contrary to, or involved an unreasonable application of," the clearly established precedent in *Jackson*.  *See id.* at 100 (quoting 28 U.S.C. § 2254(d)(1)).

---

12 *Benham*, 816 S.W.2d at 187.

The analysis of the Supreme Court of Kentucky did not squarely address the federal Constitutional issue in question because it applied the standard in *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). *See Lynch*, 642 S.W.3d at 658-60. However, the undersigned will review this claim under § 2254(d)(1) because the Sixth Circuit has indicated that the analysis in *Benham* does bear some similarity to the requisite Constitutional analysis. *See Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006) (indicating in such circumstances the Court will "review the record and the law, and will reverse only if we determine that the state court decision was contrary to, or an unreasonable application of, federal law"); *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006); *see also Bowen v. Haney*, 622 F. Supp. 2d 516, 547 (W.D. Ky. 2008) (conducting a § 2254(d)(1) review because the *Benham* standard applied by the Supreme Court of Kentucky was found to be similar to the *Jackson* standard); *Longwell v. Arnold*, 559 F. Supp. 2d 759, 767-68 (E.D. Ky. 2008)(same). More specifically, the undersigned will determine whether the decision of the Supreme Court of Kentucky "was contrary to, or an unreasonable application of," the clearly established precedent set forth in *Jackson*. 28 U.S.C. § 2254(d)(1).

The clearly established Supreme Court precedent directs that courts should review the record in the light most favorable to the prosecution to determine whether a rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324. If the answer is in the affirmative, then the motion for a directed verdict of acquittal should have been denied and the case should have been presented to the jury. *Id.* at 324-26. Even if the evidence is circumstantial. *Id.* The Kentucky Supreme Court—after it reviewed the evidence in the record in the light most favorable to the prosecution—found that Lynch was not entitled to a directed verdict because the Commonwealth presented ample evidence for the jury to find beyond a reasonable doubt that Lynch committed the charges of first-degree rape and tampering with physical evidence.

18

Consequently, Lynch has failed to demonstrate that the Kentucky Supreme Court's adjudication of his claim is contrary to or an unreasonable application of the clearly established precedent of the United States Supreme Court set forth in *Jackson*. 28 U.S.C. § 2254(d)(1). Additionally, Lynch has not demonstrated that the Kentucky Supreme Court's conclusion was based upon "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Therefore, Lynch is not entitled to relief on the insufficient evidence claim raised in Ground One in the habeas petition.

When the Court rejects a claim on the merits, the petitioner must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Lynch has not demonstrated that reasonable jurists would find the above assessment of his claim debatable or wrong. Therefore, Lynch is not entitled to a Certificate of Appealability as to the part of his directed verdict claim raised in Ground One in the habeas petition that is not procedurally defaulted.

The Supreme Court has established a two-pronged test that is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on procedural grounds. *Id.* at 484-85. To satisfy the first prong of the *Slack* test, Lynch must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Id.* at 484. To satisfy the second prong, Lynch must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[13] *Id.* Notably, the Court need not conduct the two-pronged inquiry in the order identified or even address both parts if

---

[13] "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Lynch makes an insufficient showing on one part.[14]  *Id.* at 485.  For example, if the Court determines Lynch failed to satisfy the procedural prong, then it need not determine whether the constitutional prong is satisfied.  *Id.*  For the reasons set forth above, jurists of reason would not find it debatable that federal review is barred as to the part of Ground One which challenges the sufficiency of the evidence as to the murder and abuse of a corpse charges because it is procedurally defaulted and Lynch has failed to demonstrate "cause" and "prejudice" or that failure to consider the federal claim will result in a "fundamental miscarriage of justice."  *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).

### C.    Collateral Attack Claims

In Ground Two, Lynch raises the fifteen claims that he presented to the state trial court in his Rule 11.42 motion (*compare* DN 1 PageID # 17-18 *with* DN 16-5 PageID # 104-06).  The Ohio Circuit Court issued a one-page order that indicates it denied Lynch's Rule 11.42 motion because he failed to: (1) comply with a State procedural rule and that failure provides an adequate and independent grounds for the State's denial of relief; and (2) demonstrate that counsel provided deficient assistance and that Lynch was prejudiced as a result (DN 16-6).

The undersigned notes that federal review of these fifteen claims is barred if Lynch fails to overcome the two distinct procedural defaults that occurred in the Kentucky state courts.  "The failure to comply with a well-established and generally enforce state rule constitutes procedural default and is an adequate and independent state ground for denying relief."  *Hodge v. Haeberlin*, 579 F.3d 627, 638 (6th Cir. 2009) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006)).

---

[14] "Each component of the § 2253(c) showing is part of a threshold inquiry, and a Court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue of whose answer is more apparent from the record and arguments."  *Slack*, 529 U.S. at 485.

Kentucky's Criminal Rule 11.42(2) requires that a movant for collateral review "shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds" and further that "[f]ailure to comply with this section shall warrant a summary dismissal of the motion."  *Id.* at 638-39.  The Sixth Circuit has held that Ky. R. Crim. P. "11.42 is a regularly followed procedural rule that constitutes and adequate and independent ground for denying a claim."  *Id.* at 639.  Therefore, the Ohio Circuit Court's determination that Lynch failed to properly plead his claims precludes review by this Court absent Lynch showing "cause" for the default and actual "prejudice" arising from the claimed constitutional error *or* that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Harris v. Reed*, 489 U.S. 255, 262-64 (1989) (cleaned up); *Murray v. Carrier*, 477 U.S. 478, 485, 495-96 (1986).  But Lynch has not attempted to make either showing.

The undersigned has considered the fact that twelve of the fifteen claims—that Lynch presented to the state trial court—involved allegations of ineffective assistance of trial counsel (DN 16-5 PageID # 104-06).  The *Martinez/Trevino* equitable exception could be used to establish "cause" if the following requirements are satisfied: (1) the ineffective assistance of trial counsel claim "is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit"; (2) the "cause" for default of the ineffective assistance of trial counsel claim arises out of the absence of appointed counsel or ineffectiveness of appointed counsel in the initial-review collateral proceeding; (3) the state collateral review proceeding was the "initial" review proceeding concerning the ineffective assistance of trial counsel claim; and (4) state law requires the prisoner to raise the ineffective assistance of trial counsel claim in an initial-review collateral proceeding.  *See Martinez*, 566 U.S. at 14-15, 17-18.  Lynch has argued that the absence of appointed counsel is the reason for his failure to satisfy the pleading requirements in Ky. R. Crim.

P. 11.42(2).  Further, the state collateral review proceeding at issue is the "initial" proceeding concerning the twelve ineffective assistance of trial counsel claims.  Additionally, Ky. R. Crim. P. 11.42 required Lynch to raise the twelve ineffective assistance of trial counsel claims in the initial-review collateral proceeding before the Ohio Circuit Court.  But Lynch has not provided, nor has the undersigned found, sufficient information to demonstrate any of the twelve ineffective assistance of trial counsel claims has some merit.  Therefore, as to the twelve ineffective assistance of trial counsel claims, Lynch cannot show that the *Martinez/Trevino* equitable exception could be used to demonstrate "cause" to overcome the procedural default that occurred before the Ohio Circuit Court.  Even if Lynch could successfully demonstrate "cause" under the *Martinez/Trevino* exception, the Supreme Court has explicitly indicated the *Martinez/Trevino* exception does not apply to appeals from initial-review collateral proceedings.  *See Davila v. Davis*, 582 U.S. 521, 525, 530, 538 (2017).  Consequently, Lynch cannot use the *Martinez/Trevino* exception to show "cause" to excuse the procedural default before the Kentucky Court of Appeals.

The Kentucky Court of Appeals dismissed Lynch's appeal because he failed to comply with Kentucky's appellate procedural rules concerning the time for filing an appellant brief (DN 16-14 PageID # 138-39).  *See* Ky. R. App. P. 10(B).  Lynch's failure to comply with this well-established and generally enforced state rule constitutes a procedural default and is an adequate and independent state ground for denying relief.  *See Hodge v. Haeberlin*, 579 F.3d 627, 638 (Ky. 2009).  This dismissal by the Kentucky Court of Appeals precludes review by this Court absent Lynch showing "cause" for the default and actual "prejudice" arising from the claimed constitutional error *or* that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Harris*, 489 U.S. at 262-64 (cleaned up); *Carrier*, 477 U.S. at 485, 495-96.  As indicated above, Lynch has not attempted to show "cause" *or* that the failure to consider his claims

will result in a "fundamental miscarriage of justice. Further, the undersigned has not found any basis for him to make either showing. Therefore, federal review of the fifteen claims in Ground Two of the petition are barred.

For the reasons set forth above, Lynch cannot satisfy the second prong of the *Slack* test because jurists of reason would not find it debatable that federal review is barred as to the fifteen claims in Ground Two due to the procedural defaults before the Kentucky courts and Lynch failing to demonstrate "cause" and "prejudice" or that failure to consider the federal claim will result in a "fundamental miscarriage of justice." 529 U.S. at 484. Therefore, the undersigned does not recommend the issuance of a Certificate of Appealability as to the fifteen claims raised in Ground Two of the habeas petition.

## IV.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Lynch's habeas petition under 28 U.S.C. § 2254 (DN 1) be **DENIED** and **DISMISSED**. Additionally, the undersigned **DOES NOT RECOMMEND** issuance of a Certificate of Appealability for the claims set forth in Grounds One and Two in Lynch's habeas petition.

September 5, 2024

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

<u>NOTICE</u>

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b)(1), the undersigned magistrate judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). If a party has objections, such objections must be timely filed, or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

September 5, 2024

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies to:    Donald M. Lynch, *pro se*
                Counsel of Record